# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISHNA REDDY,<br><br>              Plaintiff,<br><br>       v.<br><br>PRECYSE SOLUTIONS LLC, et al.,<br><br>              Defendants. | Case No.  1:12-cv-02061-AWI-SAB<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS**<br><br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

Plaintiff Krishna Reedy, appearing pro se and in forma pauperis in this action, filed a complaint on December 19, 2012.  Plaintiff is challenging the termination of her employment and brings this action against Precyse Solutions, LLC ("Precyse"), Jeffrey Levitt, Chris Powell, Cheryl Servais, Sally Kurth, Stacie Moore, Sharon Fremer, Janell Bailey-Beach, Sherry Todd (also known as Sherry Grantham), and Shirley Wilder.

## I.

### SCREENING REQUIREMENT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of

1

Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)).

To state a claim plaintiff must allege sufficient factual matter, which accepted as true, states a claim for relief that is plausible on its face.  Iqbal, 129 S. Ct. at 1949; OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir. 2012).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).   Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.   Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

## II.

### SUMMARY OF ALLEGED FACTS

Plaintiff, a woman of East Indian origin, after graduating from medical school in India, moved to the United States.  Plaintiff has experience working as a medical transcriptionist and Quality Assurance ("QA") Editor.  (Compl. § 20.)  Around September 2007, Paula Walsh offered Plaintiff a position as a QA Editor at Defendant Precyse, however, allegedly upon discovering that Plaintiff was a "whistleblower" regarding improper billing practices at another medical transcription company, the offer was rescinded.  (Id. at § 23.)  On October 19, 2010, Plaintiff was hired by Defendant Precyse as a full-time production based medical transcriptionist.  Plaintiff had a schedule fixed at 40 hour per week and her account manager was Defendant Todd.  (Id. at § 24.)

Plaintiff complains that when there was no work available she was to clock out and stay on duty and was not paid for the time awaiting another assignment.  Plaintiff raised the issue of the failure to pay for her time waiting for work as a violation of the Fair Labor Standards Act and California wage laws.  (Id. at § 25.)

2

During a transcriptionist meeting, Defendants Todd and Bailey-Beach asked Plaintiff to provide information about an account.  Plaintiff e-mailed the information and copied Defendant Levitt.  Defendants Todd and Bailey-Beach ordered Plaintiff to attend a meeting at which they accused her of going over their heads to complain about them to Defendant Levitt, allegedly creating a hostile work environment.  (Id. at § 26.)  Plaintiff claims that Defendant Todd discriminated against her by assigning her "all the kickback reports" that were difficult with poor audio or had a difficult dictator.  These were not for her accounts.  Other transcriptionists who were not of her ethnic origin were allowed to choose the work type of their choice.  (Id. at § 27.)

Although it was the policy of Defendant Precyse to leave dictation with poor quality to QA, Plaintiff was told by Defendants Todd and Bailey-Beach not to leave blanks in her reports because she was overusing QA to complete her reports.  Defendants Fremer, Powell, and Levitt knew of this alleged harassment and did not take any measures "to stop the discrimination, harassment, or the hostile environment created for [Plaintiff] by the management team at Precyse in the West region."  (Id. at § 28.)

Plaintiff applied for an account manager position.  Defendant Wilder was hired and Defendant Kurth stated that it was because she had more experience than Plaintiff.  However when asked by a co-worker to answer a simple question Defendant Wilder did not know the answer and forwarded the question to the other transcriptionists for an answer.  (Id. at § 29.)

Plaintiff applied for a work coordinator position.  Defendant Moore conducted a brief preliminary phone interview lasting less than one minute.  At the conclusion of the conversation, Plaintiff was told that she would be contacted for a second interview.  Plaintiff did not receive a second interview and was told by Defendant Moore that the position was filled by a candidate with more experience than Plaintiff.  Plaintiff alleges that the candidates selected did not have more experience than she did.  Defendant Wilder later told Plaintiff that Defendant Kurth asked her what kind of employee Plaintiff was.  Plaintiff claims that Defendants Moore and Kurth practice nepotism because she heard that some open positions were not advertised but were filled by word of mouth recruiting by Defendants Kurth and Moore.  (Id. at § 30.)

Plaintiff contends that although she was significantly more qualified than any of the

1   candidates hired for management positions, she continued to work at the lowest level of

2   employment.  Due to the difficult reports that she was assigned to work on, she left reports for

3   QA to review and the QA staff were filling in words that were not medically accurate.  Those

4   reports came back from clients as having "critical errors" and the QA Department assigned their

5   errors to Plaintiff.  Plaintiff pointed out that the errors were made by QA, but Defendant Wilder

6   started counseling her for errors of the QA staff.  (Id. at § 31.)

7   　　　Plaintiff filed a Title VII complaint with Defendant Kurth in March 2011, and requested to

8   be transferred out of the West region.  Defendant Kurth did not promptly respond to the

9   complaint or transfer Plaintiff, even though there were openings in other regions.  Plaintiff e-

10  mailed Defendant Powell on July 7, 2011, requesting an appointment to discuss her grievances

11  against Defendant Precyse.  (Id. at § 32.)

12  　　　Defendant Powell assigned Defendants Fremer and Kurth to look into the issues raised.

13  On July 16, 2011, Defendant Fremer responded to Plaintiff that she saw no evidence that Plaintiff

14  was assigned more difficult jobs or that other employees received special treatment.  Defendant

15  Fremer informed Plaintiff that other medical transcriptionists were hitting quality and

16  performance metrics with similar work assignments, although Plaintiff alleges that her

17  assignments were not similar as she was being assigned "kick-back" reports.  Plaintiff claims that

18  QA was making changes to her reports that were incorrect and sending them to clients.  Plaintiff

19  was accused of making the errors although the management team had access to the transcription

20  platform which would have shown them who typed the information in the reports.  (Id. at § 33.)

21  　　　Defendant Fremer did not respond to Plaintiff's Title II complaint until August 11, 2011,

22  at which time Plaintiff was offered a transfer to another department where one of the managers

23  had sent a derogatory e-mail about Plaintiff when she was newly hired.  (Id. at § 34.)

24  　　　During Plaintiff's employment with Defendant Precyse, which lasted slightly more than 10

25  months, Plaintiff took off two days when her internet connection was down.  All other time off

26  was due to the unavailability of work.  In August 2011, Defendant Wilder excused Plaintiff from

27  working until she was transferred out of the West region, and then misrepresented to Defendant

28  Kurth that Plaintiff had not been excused from work prior to being transferred.  Plaintiff

4

1   requested time off due to the stress that she was under and Defendant Kurth told her that she did

2   not have any paid time off, although Plaintiff alleges she had $556.26 accrued in her Paid Time

3   Off Bank ("PTO") at the time.  Defendant Kurth told Plaintiff that she had used 181 hours of time

4   off since her hire date, when those hours were for time she was told to clock off and wait for work

5   in violation of the Fair Labor Standards Act and California law.  Plaintiff requested to speak to

6   Defendants Powell and Levitt and was refused.  (Id. at § 35.)

7        In August 2011, Plaintiff notified Defendant Wilder that she would be taking time off for

8   her birthday from 8:00 p.m. on August 19 until 4:00 a.m. on August 20.  Defendant Wilder

9   informed Plaintiff that the time off was refused because she did not have any paid time off

10   available.  (Id. at § 36.)  Plaintiff responded that she had $556.26 available and took the time off.

11   (Id. at §§ 36-37.)  Plaintiff received a response after she returned from her time off stating that her

12   leave was not approved.  (Id. at § 37.)  On August 22, 2011, Plaintiff filed a complaint about

13   Defendant Kurth with administration.  Defendant Servais responded on August 23, 2011, and

14   requested additional information.  (Id. at § 38.)

15        On August 24, 2011, Defendant Wilder arranged a meeting between herself, Plaintiff, and

16   Defendant Kurth.  Plaintiff told Defendant Wilder that it would be inappropriate to have a

17   meeting since she had filed a complaint that was pending review.  Defendant Wilder then called

18   Plaintiff and yelled at her in an unprofessional tone, asserting that she was Plaintiff's supervisor

19   and Plaintiff must participate in the conference call.  Plaintiff again insisted that the meeting was

20   inappropriate.  Another mandatory meeting was arranged and Plaintiff was informed that she

21   must attend.  Plaintiff wrote back stating that she wanted an e-mail stating what would be

22   discussed at the meeting.  (Id. at § 39.)

23        Plaintiff did not receive a response to her request so e-mailed Defendant Powell regarding

24   what had occurred.  Plaintiff informed Defendant Powell that she felt that they had terminated her

25   employment and requested that termination papers and return tags for her company computer be

26   sent to her home address.  On August 25, 2011, Plaintiff was "locked out" for "insubordination"

27   and "suspended without pay" for refusing to meet with her "harassers."  Plaintiff did not receive a

28   response from Defendant Powell or Levitt.  (Id. at § 40.)  On September 2, 2011, Plaintiff's

employment with Defendant Precyse was documented as "terminated voluntarily" by Defendant Kurth.  Plaintiff received a check for her accrued unused paid time off.  (Id. at § 41.)  On September 19, 2011, Defendant Servais sent Plaintiff an e-mail stating that she did not find any evidence of harassment, retaliation or improper conduct toward Plaintiff by Defendant Kurth. (Id. at § 42.)

As discussed below, Plaintiff's allegations are sufficient to state a claim against Defendant Precyse for disparate treatment in violation of Title VII and 42 U.S.C. § 1981, and state law claims for disparate treatment under the FEHA, breach of contract, breach of the covenant of good faith and fair dealing, and wage laws; however the complaint does not state any other cognizable claims for relief.  Plaintiff will be granted the opportunity to file an amended complaint to cure the deficiencies described in this order.

### III.

### DISCUSSION

Plaintiff alleges 1) discriminatory employment practices of harassment and hostile work environment; 2) violation of the Fair Labor Standards Act and California wage laws, 3) tortious wrongful termination in violation of public policy; 4) breach of contract; 5) breach of covenant of good faith and fair dealing; 6) promissory estoppel; 7) fraud, deceit, and civil conspiracy; 8) intentional and negligent interference with contract and prospective economic advantage; 9) intentional and negligent infliction of emotional distress; and 10) unconstitutional offshoring of confidential medical information of the citizens of the United States.  Plaintiff is seeking general and statutory damages of $2 million, punitive damages of $100 million, and declaratory and injunctive relief.

### A.    Discriminatory Employment Practices

Plaintiff claims that during her employment with Defendant Precyse she was subjected to discrimination due to race, ancestry, national origin, color, religion, and age in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. §§ 1981 and 1985.

1.     Age Discrimination in Employment Act Claim

To state a claim for disparate treatment under the ADEA, the employee must allege that "1) she was at least forty years old; (2) she was performing her job satisfactorily; (3) discharged; and either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." Sheppard v. David Evans and Assoc., 649 F.3d 1045, 1049 (9th Cir. 2012) (internal punctuation and citations omitted).  Plaintiff has failed to set forth factual allegations regarding her age.  Nor does Plaintiff's complaint demonstrate that she was performing her job satisfactorily.  Plaintiff states that due to her difficult work assignment she was counseled for having critical errors and relying too much on QA to review her reports.  Finally, as discussed further below, Plaintiff was not discharged but resigned from her position.  Plaintiff has failed to state a claim for violation of the ADEA.

2.     Title VII and 42 U.S.C. § 1981 Claims

42 U.S.C. § 2000e-2 provides that it shall be unlawful for an employer to discriminate against any individual because of his race, color, religion, sex, or national origin.  Section 1981 prohibits discrimination in "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.  It is the employer, and not individual employees, who can be held liable for damages under Title VII.  Miller v. Maxwell's Intern. Inc., 991 F.2d 583, 587 (9th Cir. 1993). The same legal standards apply to discrimination claims under Title II and section 1981.  Surrell v. California Water Service Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

To state a claim for disparate treatment under Title VII or Section 1981, plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Berry v. Dep't of Social Services, 447 F.3d 642, 656 (9th Cir. 2006).

**a.     Religion**

7

While Plaintiff alleges that she was discriminated against based upon religion, the complaint is devoid of any allegations regarding her religious beliefs or any action taken by any defendant based upon her religion.   Accordingly, Plaintiff fails to state a claim for religious discrimination.

### b.       National Origin

As a person of East Indian origin, Plaintiff is a member of a protected class.   Plaintiff claims that she graduated from medical school in India and has worked as a medical transcriptionist for many years, which is sufficient to show that she was qualified for her position.

Plaintiff alleges that she was given more difficult work assignments and was counseled for her error rate and producing below the requirement for medical transcribers which was because of her more difficult assignment.   The Ninth Circuit liberally construes adverse employment action as any employment action reasonably likely to deter an employee from engaging in protected activity.   Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).   Plaintiff's allegations are sufficient to allege adverse employment action.   Plaintiff states that other medical transcriptionists that were not of her national origin were allowed to choose their work assignments.   At the pleading stage, Plaintiff has stated a claim for discrimination based upon national origin.   While Plaintiff alleges the claim against her supervisors and other employees, under Title VII Plaintiff's discrimination claim may only proceed against Defendant Precyse.

Plaintiff fails to state any other discrimination claims based upon national origin.   While Plaintiff alleges that she was passed over for promotions, as alleged in the complaint, this was due to the promotions being given to employees with more experience or because of nepotism. Plaintiff also alleges that management inquired into the type of employee she was prior to declining to interview her for promotions, further indicating that the failure to promote her was due to work related issues rather than her national origin.   Although Plaintiff alleges that she was more qualified or experienced than the employees who received the promotions, this is insufficient to state a claim for discrimination based upon her national origin.

Similarly, as alleged in the complaint, Plaintiff was denied time off because she did not have PTO available.   When Plaintiff was ordered to attend the mandatory meeting it was due to

her disregard of the denial of her request for leave and the fact that she filed a complaint about the issue did not excuse her from attending the mandatory meeting.  Finally, although Plaintiff alleges that she was terminated, as discussed below, Plaintiff resigned from her position.  Plaintiff fails to allege any facts to show that she was denied promotions, denied time off, or terminated because of her national origin or that other similarly situated individuals outside her protected class were treated differently.

### c.      Hostile Work Environment

Plaintiff claims that she was subjected to harassment based on her national origin creating a hostile work environment.  To state a prima facie hostile-work environment claim, a plaintiff must plead "(1) the defendants subjected her to verbal or physical conduct based on her [national origin]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment."  Surrell, 518 F.3d at 1108; Brooks. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  This requires that the working environment be both subjectively and objectively perceived as abusive.  Brooks, 229 F.3d at 923.  In determining whether plaintiff has set forth a colorable claim, the court is to look at the totality of the circumstances, including the frequency, severity, and level of interference with work performance.  Id. at 923-24.

In this instance, Plaintiff complains that she was given a more demanding work assignment than other employees, was accused of and counseled for making errors she attributes to others, and was passed over for promotions.  While Plaintiff alleges that she was subjected to insults and demeaning comments, the complaint fails to set forth any factual allegations to support such a claim.  Plaintiff's factual allegations regarding the working conditions that she was subjected to are insufficient to rise to the level of severe and pervasive harassment to state a hostile work environment claim.

### d.      Retaliation

Plaintiff also alleges that she was retaliated against for raising FLSA and Title VII issues by being charged with insubordination and terminated.  In order to state a claim for retaliation under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse

9

employment action and (3) a causal link between the two." Brooks, 229 F.3d at 928.  Based upon the allegations in Plaintiff's complaint, the insubordination charge resulted, not from any discriminatory motive, but from Plaintiff's refusal to attend the mandatory meeting after Plaintiff took time off that her supervisor had denied.  Further, although Plaintiff alleges that she was terminated from her employment, as discussed below, Plaintiff resigned.  Plaintiff fails to state a claim for retaliation.

### B.      Conspiracy to Interfere with Civil Rights

Plaintiff alleges that defendants entered a conspiracy to interfere with her civil rights in violation of 42 U.S.C. § 1985.  Section 1985 prohibits entering into a conspiracy to deprive any person from equal protection of the laws.  42 U.S.C. § 1985(3).  To state a claim under section 1985(3), a plaintiff must allege sufficient facts showing "a deprivation of a right motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'"  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)).  "The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'"  Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790 (1971)) (emphasis omitted).  Other than Plaintiff's conclusory statement that a conspiracy existed, the complaint fails to allege any facts to support the allegation that a conspiracy existed between any of the named defendants.  Plaintiff fails to state a plausible claim under section 1985.

### C.      Fair Labor Standards Act ("FLSA")

Plaintiff alleges that the time that she was required to clock out and wait for work was not paid and violated the FLSA.  The FLSA requires employers to pay employees at least a specified minimum hourly wage for work performed.  29 U.S.C. § 206.  "An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'  An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call."  29 C.F.R. § 785.17.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Whether waiting time is time worked under the Act depends upon particular circumstances. The determination involves "scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the circumstances. Facts may show that the employee was engaged to wait or they may show that he waited to be engaged.

29 C.F.R. § 785.14.

In determining whether an employee is entitled to be compensated for time spent waiting for work, the court considers "(1) the degree to which the employee is free to engage in personal activities; and (2) the agreement between the parties." Berry v. County of Sonora, 30 F.3d 1174, 1180 (9th Cir. 1994) (quoting Owens v. Local No. 169, Ass'n of W. Pulp and Paper Workers, 971 F.2d 347, 350 (9th Cir. 1992)).   Courts consider a variety of factors in determining if the employee "had use of on-call time for personal purposes: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time." Owens, 971 F.2d at 354-55.   Where an employee does not like the on call policy, but continues to work under the terms of the policy, the policy may be impliedly accepted by the employee. Id. at 354-55.

In this instance, Plaintiff was working remotely from her home.   (ECF No. 1 at ¶ 1.) During her assigned eight hours, Plaintiff was told to check in periodically and clock in when work was available.  (Id. at ¶ 54.)  These bare allegations are insufficient to state a plausible claim for a violation of the FLSA.

**D.      Unconstitutional Offshoring of Confidential Medical Information of the Citizens of the United States**

Plaintiff states that she has been unable to find a transcription job in the past year because transcription jobs are being sent overseas.   Plaintiff claims that Defendants are off shoring

11

confidential medical information of the citizens of the United States in violation of their privacy rights.   Plaintiff's allegations are insufficient to state a plausible claim that any violation is occurring.

Additionally, a violation of the constitution would only be actionable if committed by a state actor.  Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).  Plaintiff has not alleged any facts from which Defendant Precyse could be found to be a state actor.

Finally, for each form of relief sought in federal court, Plaintiff must establish standing. Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010). This requires Plaintiff to "show that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted).  Plaintiff's allegation that she is a medical consumer does not establish any injury in fact, nor does she have standing to challenge the alleged violation of the privacy rights of third parties.  Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1163 (9th Cir. 2002), cert denied 538 U.S. 1031 (2003).

**E.**     **State Law Claims**

1.     Fair Employment Housing Act ("FEHA")

Plaintiff alleges claims pursuant to California Government Code sections 12900 et seq. As relevant here, California law makes it unlawful for an employer to discriminate against, harass, or terminate an employee because of their race, national origin, or color.  Cal. Gov. Code § 12940 (a) and (j).  Under the FEHA, while an individual supervisor may be liable for retaliation or harassment, they may not be sued for alleged discriminatory acts.  Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1288 (9th Cir. 2001); Reno v. Baird, 18 Cal.4th 640, 663 (1998).  Claims of employment discrimination under Title VII and FEHA are guided by

1  the same principles.  Brooks, 229 F.3d at 923.

2          **a.**      **Disparate Impact**

3         For the reasons discussed in analyzing Plaintiff's discrimination claim under Title VII, at

4  the pleading stage, Plaintiff's complaint is sufficient to state a claim against Defendant Precyse

5  for discrimination under section 12940(a) and (j).

6          **b.**      **Retaliation**

7         The FEHA also makes it unlawful to discharge or otherwise discriminate against an

8  employee because they "filed a complaint, testified, or assisted in any proceeding" under the

9  FEHA.  Cal. Gov. Code § 12940(h).  Plaintiff's allegations for retaliation under the FEHA fail for

10  the same reasons her Title VII claims of retaliations did not state a claim.

11         2.     California Wage Laws

12         Plaintiff alleges that the time that she was required to clock out and wait for work was not

13  paid and violated California Wage laws.  Whether on-call waiting time is compensable under

14  California law depends on whether the time spent waiting is predominately for the benefit of the

15  employer.  Gomez v. Lincare, 173 Cal.App.4th 508, 523 (2009).  As under federal law, this is

16  determined by the agreement of the parties and the degree to which the employee is free to

17  engage in personal activities.  Id.

18         While Plaintiff's wage claim for wait time under state law fails for the same reason that

19  the FLSA claim did not state a claim, under California law an employee who is required to report

20  to work and does report, but is not furnished with work, shall be paid for half the usual or

21  scheduled day's work.  Cal.Code.Regs. tit. 8, § 11010(5)(A).  Liberally construing Plaintiff's

22  complaint, Plaintiff alleges that she reported to work and was not paid because no work was

23  available.  Plaintiff has stated a claim for violation of the reporting time pay provisions under

24  California law.

25         3.     Tortious Wrongful Termination in Violation of Public Policy

26         Although Plaintiff contends that she was terminated for filing a Title VII complaint and

27  raising FLSA issues, the facts as alleged show otherwise.  Plaintiff states that when she was

28  ordered to appear for the mandatory meeting she informed Defendant Powell that she felt that

1  they had terminated her employment and requested that termination papers and return tags for her

2  company computer be sent to her home address.

3          Wrongful termination is tortious when it occurs in violation of a fundamental public

4  policy.  Gould v. Maryland Sound Industries, Inc., 31 Cal.App.4th 1137, 1147 (1995).  To state a

5  claim for wrongful termination in violation of public policy, the plaintiff must show that "the

6  dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied

7  in a statute or constitutional provision.  Tort claims for wrongful discharge typically arise when

8  an employer retaliates against an employee for "(1) refusing to violate a statute, (2) performing a

9  statutory obligation, (3) exercising a statutory right or privilege or (4) reporting an alleged

10 violation of a statute of public importance."  Colores v. Board of Trustees, 105 Cal.App.4th 1293,

11 1307 (2003) (quoting Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1244-45 (1994) (internal

12 punctuation omitted).  In this instance, Plaintiff's claim fails because she has not shown that she

13 was terminated from her employment.

14         Since Plaintiff resigned from her employment her wrongful termination claim can only

15 prevail if her resignation was a constructive discharge.  A constructive discharge occurs when an

16 employer's conduct effectively forces an employee to resign, and is legally regarded as a firing

17 rather than a resignation.  Turner, 7 Cal.4th at 1244-45.  "In order to establish a constructive

18 discharge, an employee must plead and prove, by the usual preponderance of the evidence

19 standard, that the employer either intentionally created or knowingly permitted working

20 conditions that were so intolerable or aggravated at the time of the employee's resignation that a

21 reasonable employer would realize that a reasonable person in the employee's position would be

22 compelled to resign."  Turner, 7 Cal.4th at 1251.  This requires that the conditions be unusually

23 aggravated or amount to a continuous pattern before the situation is deemed intolerable.  Id. at

24 1247.

25         Plaintiff has failed to allege facts to show by a preponderance of the evidence that she was

26 subjected to conditions that were so intolerable and aggravated that a reasonable person would be

27 compelled to resign.  Basically, Plaintiff was being counseled by her supervisors for failing to

28 measure up to quality control standards for the medical transcribers,  and was ordered to attend a

14

mandatory meeting after she took time off that had been denied by her supervisor. These conditions are not so intolerable that a reasonable person would be compelled to resign. While Plaintiff makes conclusory allegations that she was terminated for filing a complaint and insubordination, this is not supported by the factual allegations in the complaint. According to the complaint, Plaintiff's supervisors were counseling her due to "critical errors" in her transcription. The Court recognizes that the transcription of medical records can have life threatening consequences; and therefore, the accuracy of the medical transcription is extremely important. Since Plaintiff resigned from her employment, and was not terminated, the complaint fails to state a claim for wrongful termination in violation of public policy.

### 4.    Breach of Contract

Plaintiff asserts that her employment contract was breached by Defendants not providing her with work. To be entitled to damages for breach of contract, plaintiff must plead and prove that (1) a contract existed; (2) plaintiff performed or was excused from performing under the contract; (3) defendant's breach; and (4) plaintiff sustained damages. Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011).

Plaintiff has alleged that she entered into an employment contract with Defendant Precyse to provide medical transcription services and was to be a full time, eight hour per day employee. Plaintiff claims that when she showed up to work her eight hour shift, Defendant Precyse did not provide her with work and failed to pay her for the agreed upon hours. Due to the failure to provide her with work Plaintiff contends that she sustained damages of loss of income. Plaintiff has sufficiently alleged a breach of contract claim against Defendant Precyse.

### 5.    Breach of Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing exists to prevent one party to a contract from unfairly frustrating the other party's right to receive the agreed upon contractual benefits. Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 349 (2000). This does not impose upon the parties substantive duties or limits "beyond those incorporated in the specific terms of their agreement." Guz, 24 Cal.4th at 349-50. The elements to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his

obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  Reinhardt v. Hemini Motor Transport, 879 F.Supp.2d 1138, 1145 (E.D.Cal. 2012) (quoting Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F.Supp.2d 952, 968 (N.D.Cal. 2010); Judicial Council of California, Civil Jury Instructions ("CACI") § 325.)

Plaintiff's allegations are sufficient to state a claim against Defendant Precyse for breach of the covenant of good faith and fair dealing.

6. Promissory Estoppel

Under California law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority, 23 Cal.4th 305, 310 (2000).

Plaintiff alleges that when she was hired she was offered the next QA job that was available and employment as a fulltime transcriptionist which induced her to forego other options and employment opportunities.  Plaintiff's complaint fails to state any detrimental reliance on the promises alleged.  "[D]etrimental reliance is an essential feature of promissory estoppel."  Walker v. KFC Corp., 728 F.2d 1215, 1218 (9th Cir. 1984).  Plaintiff generally states that she had to forego any other options or employment opportunities that were available to her.  Plaintiff has failed to allege facts sufficient to show that she detrimentally relied on any promises by any defendant in order to state a claim for promissory estoppel.

7. Fraud and Deceit

Claims for fraud are governed by the heightened pleading standard of Federal Rule of Civil Procedure 9(b) which requires that claims for fraud "must state with particularity the circumstances constituting fraud . . . ."  Under California law actual fraud occurs when a party induces another to enter into a contract with the intent to deceive.  Cal.Civ.Code § 1572.  To comply with Rule 9, the plaintiff must set forth the circumstances constituting the alleged fraud

16

1  with enough specificity to place defendants on notice of the particular misconduct so that they can

2  defend against the claim.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).

3  Similarly, under California law a claim for deceit requires the party act willfully with the

4  "intent to induce [another] to alter his position to his injury or risk. . . ."  Cal.Civ.Code § 1709.

5  The elements of fraud under California law that give rise to a claim for deceit are "(a)

6  misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

7  (or 'scienter'); (c) intent to defraud, i.e., induce reliance; (d) justifiable reliance; and (e) resulting

8  damage."  <u>Kearns</u>, 567 F.3d at 1126; <u>Engalla v. Permanente Med. Group, Inc.</u>, 15 Cal.4th 951,

9  974 (1997).

10  Plaintiff alleges that she was hired as a fulltime transcriptionist for production pay, with

11  assurances that the next available QA position would be hers, and she relied upon these

12  statements in accepting the position in the East region.  (ECF No. 23 at §§ 76, 77.)  Averments of

13  fraud require the "who, what, when, where, and how" of the alleged misconduct.  <u>Vess v. Ciba-</u>

14  <u>Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).  Here, while Plaintiff states that she was

15  told the next available QA position would be hers, she does not allege with the specificity

16  required under Rule 9.

17  Further, based on the allegations in the complaint, Plaintiff fails to show that there was

18  any intent to deceive her.  Plaintiff has not alleged any fact to show that any defendant had the

19  required scienter or that there was an actual intent to defraud or induce reliance.  Nor does

20  Plaintiff identify any detrimental reliance.  While Plaintiff contends that promises were not kept,

21  the facts as alleged demonstrate that the reason was management's concerns regarding Plaintiff's

22  job performance.  Plaintiff has failed to plead with the required specificity to state a claim that

23  any defendant willfully induced her to enter a contract with the intent to deceive.

24  8.  <u>Civil Conspiracy</u>

25  Initially, Plaintiff's civil conspiracy claim is based on the alleged fraudulent conduct of the

26  defendants, and therefore, fails for the same reason her claim of fraud or deceit does not state a

27  claim.  Additionally, to state a conspiracy claim under California state law, "the plaintiff must

28  allege the formation and operation of the conspiracy, the wrongful act or acts done pursuant to it,

17

and the damage resulting from such acts. In making such allegations bare legal conclusions, inferences, generalities, presumptions, and conclusions are insufficient." State ex rel. Metz v. CCC Information Services, Inc., 149 Cal.App.4th 402, 419 (2007) (citations omitted).  Plaintiff's complaint is devoid of any facts to show the formation and operation of a conspiracy between any of the named defendants.

        9.     Intentional and Negligent Interference with Contractual Relations and Prospective Business Advantage

     "To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Reeves v. Hanlon, 33 Cal.4th 1140, 1148 (2004).  To prevail on the claim of interference with prospective business advantage the plaintiff must plead and prove the additional element of the probability of future economic benefit to plaintiff.  Edwards v. Arthur Andersen LLP, 44 Cal.45h 937, 944 (2008).

     There is no cause of action for inducing the breach of contract with the other party to the contract, nor can corporate agents or employees be held liable for inducing the breach of the employee's contract.  Shoemaker v. Myers, 52 Cal.3d 1, 24 (1990).  There is no viable claim for interference with contractual relations or prospective business advantage distinguishable from Plaintiff's breach of contract claim.  Morcote v. Oracle Corp., No. 3:05-cv-00386, 2005 WL 3157512, at *6 (N.D.Cal. Nov. 23, 2005); Shoemaker, 52 Cal.3d at 25.  "Because a managerial employee has an interest in benefiting his or her employer, acts by that employee seeking to benefit that employer do not give rise to tort liability for interference with contractual relations or prospective economic advantage." Graw v. Los Angeles County Metropolitan Transp. Authority, 52 F.Supp.2d 1152, 1154 (C.D.Cal. 1999).

     Since there is no allegation that a third party interfered with the contract, Plaintiff cannot state a cognizable claim for interference with contractual relations or prospective economic advantage.

10.     Infliction of Emotional Distress

**a.     Negligent Infliction of Emotional Distress**

"A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation and damages apply."   Wong v. Tai Jing, 189 Cal.App.4th 1354, 1377 (Ct.App. 2010).   To the extent that Plaintiff is attempting to pursue a separate claim for relief for the negligent infliction of emotional distress, Plaintiff may not do so.

**b.     Intentional Infliction of Emotional Distress**

Under California law, the elements of intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress."   Wong, 189 Cal.App.4th at 1376 (quoting Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979)).   Conduct is "outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'"   Simo v. Union of NeedleTrades, Industrial & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2002) (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999)).

The emotional distress must be "of such a substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."   Simo, 322 F.3d at 622. Plaintiff claims that she was given assignments that were more undesirable than other employees and was passed over for promotions.   Further, her supervisors spoke to her unprofessionally when they counseled her based upon errors in the quality of her work and her attendance.   Plaintiff has failed to allege facts that would rise to the level of intentional infliction of emotional distress under California law.   Janken v. GM Hughes Electronics, 46 Cal.App.4th 55, 80 (1996) ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.   A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.   If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.")

### F.   Equitable Relief

Plaintiff seeks declaratory and injunctive relief on her claims of offshoring of confidential medical records.   The federal court's jurisdiction is limited in nature and its power to issue equitable orders may not go beyond what is necessary to correct the underlying constitutional violations which form the actual case or controversy.   18 U.S.C. § 3626(a)(1)(A); Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142, 1149 (2009); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04, 118 S.Ct. 1003 (1998); City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665 (1983); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010).

Further "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

Plaintiff does not have standing to bring a claim based upon the offshoring of medical records and therefore may not obtain the relief requested.   This action shall proceed for money damages only.

### G.   Amended Complaint

Finally, Plaintiff is advised that, under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Should Plaintiff choose to file an amended complaint, her amended complaint may not exceed twenty-five pages in length, double spaced, and it will be stricken from the record if it violates this page limitation.

### IV.

### CONCLUSION AND ORDER

Plaintiff's complaint states a claims against Defendant Precyse for disparate treatment in violation of Title VII and 42 U.S.C. § 1981; and state law claims for disparate treatment under the

FEHA, breach of contract, breach of the covenant of good faith and fair dealing, and wage laws, however does not state any other claims.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff is advised of her obligations under Federal Rule of Civil Procedure 11.[1]

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendant Precyse on the claims found to be cognizable, Plaintiff may so notify the Court in writing.  The other defendants and claims will then be dismissed for failure to state a claim.  Plaintiff will then be provided with one summons and one USM-285 form for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendant Precyse.

If Plaintiff elects to amend, her amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights,  Iqbal,129 S. Ct. at 1948-49; Jones, 297 F.3d at 934.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).  The mere possibility of misconduct is insufficient to state a claim.  Iqbal, 129 S. Ct. at 1950.

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana,

---

[1] Federal Rule of Civil Procedure 11(b)states:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Should the court determine that Rule 11 has been violated, sanctions will be imposed on the offending party.

1   Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and

2   must be "complete in itself without reference to the prior or superseded pleading," Local Rule

3   220.  Based on the foregoing,

4        IT IS HEREBY ORDERED that:

5        1.     Within thirty (30) days from the date of service of this order, Plaintiff must either:

6              a.     File an amended complaint curing the deficiencies identified by the Court

7                    in this order, or

8              b.     Notify the Court in writing that she does not wish to file an amended

9                    complaint and is willing to proceed only against Defendant Precyse for

10                  disparate treatment in violation of Title VII and 42 U.S.C. § 1981; and state

11                  law claims for disparate treatment under the FEHA, breach of contract,

12                  breach of the covenant of good faith and fair dealing, and wage laws;

13        2.     If Plaintiff chooses to file an amended complaint, the amended complaint shall not

14              exceed twenty five pages in length, double spaced; and

15        3.     If Plaintiff fails to comply with this order, this action will be dismissed for failure

16              to obey a court order.

19

20   IT IS SO ORDERED.

21

22     Dated:  __**April 12, 2013**__                                 

                                     UNITED STATES MAGISTRATE JUDGE